IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DUNKIN' DONUTS FRANCHISING LLC, a )
Delaware Limited Liability Company; and )
DD IP HOLDER LLC, a Delaware Limited )
Liability Company; )
)
)
*Plaintiffs*, )
) Case No. _____
v. )
)
MANTIFF, INC., a New Jersey Company; and )
HITEN BHATT; an individual; )
)
*Defendants*. )

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

This is an action for breach of contract, trademark infringement, trade dress infringement, and unfair competition arising from Defendants' violation of their Franchise Agreement with Dunkin'. Defendants breached the agreement by repeatedly violating Dunkin's operational standards relating to health, food safety, and sanitation at their former franchised shop. Defendants received multiple written notices identifying their defaults and demanding that they be promptly cured but they have failed to remedy the situation. Indeed, the most recent inspection revealed the presence of insects, floors and equipment were extremely dirty, food was not properly labelled and dated, a water faucet was not functional, equipment was not properly maintained, and food safety inspection forms had not been completed, to name but a few of the violations identified. Based on these repeated violations, Plaintiffs recently sent Defendants a Notice of Default and Termination terminating their Franchise Agreement. Defendants' continued use and enjoyment of Plaintiffs' trademarks, trade names, and trade dress after the effective date of the termination of the Franchise Agreement is a violation of the Lanham Act,

1

15 U.S.C. §§ 1051 *et seq.* Plaintiffs seek monetary, injunctive, and other relief against Defendants for the reasons set forth below.

## PARTIES

1. Plaintiff Dunkin' Donuts Franchising LLC is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. It is engaged in the business of franchising independent businesspersons to operate Dunkin' shops throughout the United States. Dunkin' franchisees are licensed to use the Dunkin' trade names, service marks, and trademarks and to operate under the Dunkin' system, which involves the production, merchandising, and sale of donuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

2. Plaintiff DD IP Holder LLC is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. DD IP Holder LLC is the owner of the trademarks, service marks, and trade names "Dunkin'" and "Dunkin' Donuts," and related marks. Unless otherwise specified, Dunkin' Donuts Franchising LLC and DD IP Holder LLC are hereinafter collectively referred to as "Dunkin'."

3. DB Master Finance LLC, a Delaware limited liability company, is the sole member of Plaintiff DD IP Holder LLC. In turn, the sole member of DB Master Finance LLC is Baskin-Robbins International LLC, a Delaware limited liability company. The sole member of Baskin-Robbins International LLC is Baskin-Robbins Flavors LLC, a Delaware limited liability company. The sole member of Baskin-Robbins Flavors LLC is Baskin-Robbins USA LLC, a California limited liability company. The sole member of Baskin-Robbins USA LLC is Baskin-

Robbins LLC, a Delaware limited liability company. The sole member of Baskin-Robbins LLC is Mister Donut of America LLC, a Delaware limited liability company. The sole member of Mister Donut of America LLC is Dunkin' Donuts USA LLC, a Delaware limited liability company. The sole member of Dunkin' Donuts USA LLC is Dunkin' Donuts LLC, a Delaware limited liability company. The sole member of Dunkin' Donuts LLC is Dunkin' Brands, Inc., a Delaware corporation. The principal place of business of all the foregoing entities is at Canton, Massachusetts.

4. The sole member of Plaintiff Dunkin' Donuts Franchising LLC is DB Franchising Holding Company LLC, which is a Delaware limited liability company with its principal place of business at Canton, Massachusetts. In turn the sole member of DB Franchising Holding Company LLC is DB Master Finance LLC. As stated above, DB Master Finance LLC is a Delaware limited liability company with its principal place of business in Canton, Massachusetts.

5. Defendant Mantiff, Inc. is a New Jersey corporation with its principal place of business in New Jersey. Defendant Mantiff was the owner of a Dunkin' shop located at 250 State Route 23, Franklin, New Jersey, pursuant to a Franchise Agreement dated January 31, 2016.

6. Defendant Hiten Bhatt is a natural person and, upon information and belief, a citizen and resident of the State of New Jersey. Defendant Bhatt is the President and sole shareholder of Mantiff and personally guaranteed its obligations under the Franchise Agreement pursuant to an executed personal guarantee.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to Sections 34(a) and 39 of the Lanham Act, 15 U.S. C. §§ 1116 (a) & 1121, and 28 U.S.C. §§ 1331, 1332(a), 1338, & 1367(a). The amount

in controversy, including the objects of the litigation, exceeds $75,000, exclusive of interest and costs.

8. This Court has *in personam* jurisdiction over Defendants because they conduct business in this district, they are residents of this district, and/or the events giving rise to Plaintiffs' claims occurred in this district.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and/or a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## BACKGROUND FACTS

### The Dunkin' Donuts System

10. Dunkin' is the franchisor of the Dunkin' franchise system.

11. DD IP Holder LLC is the owner of the trademarks, service marks, and trade names "Dunkin'" and "Dunkin' Donuts," and related marks (referred to hereinafter as the "Dunkin' Marks"). Dunkin' has the exclusive license to use and to license others to use the Dunkin' Marks and has, along with its predecessors, used them continuously since approximately 1960 to identify its donut shops, and the donuts, pastries, coffee, and other products associated with those shops.

12. DD IP Holder LLC owns numerous federal registrations for the mark "Dunkin' Donuts," and related marks. Among those registrations are Registration Nos. 748,901; 1,148,165; 3,328,278; and 4,290,078. Each of these registrations is in full force and effect, and is incontestable pursuant to 15 U.S.C. § 1065.

13. The Dunkin' Marks are distinctive and famous and have acquired secondary meaning.

4

14. The Dunkin' Marks are utilized in interstate commerce.

15. The Dunkin' Marks have been very widely advertised and promoted by Dunkin' Donuts over the years. Since 1971, Dunkin' and its franchisees spent over $2.5 billion on advertising and promoting the Dunkin' Marks.

16. Dunkin' franchisees currently operate more than 12,000 restaurants worldwide, including over 9,500 restaurants in the United States. Dunkin' shops feature Dunkin's distinctive trade dress, including the pink and orange color scheme, and the frankfurter lettering style. In the more than sixty years since the Dunkin' system began, millions of consumers have been served in Dunkin' shops.

17. As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Marks, the public has come to know and recognize the Dunkin' Marks, and to associate them exclusively with products and services offered by Dunkin' and its franchisees. The Dunkin' Marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin', representing and embodying Dunkin's considerable goodwill and favorable reputation.

### Obligations Under the Franchise Agreement

18. Under the Franchise Agreement, Defendants agreed to use the Dunkin' Marks, including but not limited to, its trademarks, service marks, logos, emblems, trade dress and other indicia of origin, only in the manner and to the extent specifically licensed by the Franchise Agreement. (Franchise Agreement § 9.0).

19. Pursuant to the Franchise Agreement, Dunkin' has "the right to establish "Standards" for various aspects of the System that include the . . . quality of the operating

systems of restaurants and other concepts; the products that are sold; . . . and all other things affecting the experience of consumers who patronize our System." (Franchise Agreement § 2.2).

20. Defendants also agreed that "[a]s franchisee, [they] have the right and responsibility to exercise day-to-day control over [their] franchised business to meet those Standards . . . ." (*Id.* § 2.3.)

21. Defendants further agreed to operate their franchise in accordance with Dunkin's operational Standards, including but not limited to complying with all requirements relating to health, food safety, and sanitation. (*Id.* §§ 7.0, 7.0.8.)

22. Defendants agreed to cure a violation of "any Standard relating to health, sanitation or safety . . . within twenty-four hours after delivery of notice of default to you in our then-standard form or forms of communication." (*Id.* § 14.1.3.)

23. Defendants also agreed that Dunkin' may terminate the Franchise Agreement without providing them an opportunity to cure if they default under the Franchise Agreement and they have received three (3) or more previous notices to cure for the same or substantially similar default (whether or not they have cured the default), within the immediately preceding twelve-month period. (*Id.* § 14.2.)

24. Defendants agreed that upon the termination of the Franchise Agreement, among other things, their right to use the Dunkin' Marks and system would cease, and that they would immediately cease to operate the franchised business, cease to use the proprietary marks and system, and would not, directly or indirectly, hold themselves out as present or former franchisees of Dunkin'. (*Id.* §§ 14.7.2, 14.7.3).

25. Defendants also agreed that they would promptly pay Dunkin' all sums owing and any damages, interest, costs, and expenses, including reasonable attorneys' fees, incurred as a result of Defendants' defaults. (*Id.* § 14.4.4.)

### Defendants' Defaults

26. Defendants breached the Franchise Agreement by committing the conduct described below.

27. On August 18, 2020, August 25, 2020, August 29, 2020, October 10, 2020, Defendants' shops were inspected by Plaintiffs' personnel. The inspections revealed numerous violations of Dunkin's standards for health, food safety, and sanitation.

28. On August 26, 2020, August 31, 2020, and October 10, 2020, Defendants were sent Notices to Cure notifying them that they were in default of their Franchise Agreement based on their failure to comply with Dunkin's standards. The Notices requested that they cure the violations identified on the inspection forms they were provided within 24 hours, per the terms of the Franchise Agreement. In each instance Defendants failed to cure the violations.

29. On October 15, 2020, Defendants' shop was inspected and once again found to be in default of Dunkin's standards. For example, the inspection revealed the presence of insects, floors and equipment were extremely dirty, food was not properly labelled and dated, a water faucet was not functional, equipment was not properly maintained, and food safety inspection forms had not been completed, to name but a few of the violations identified. Past inspections detected many of the same violations as well as additional violations such as equipment with mold being used, food not being thawed properly, a leaking sink, food not maintained at proper temperature, unapproved chemicals, expired food, lack of dairy and sugar dispensers, and dirty equipment that was not being properly cleaned, again to name but a few of the violations present.

30. Accordingly, pursuant to the applicable provisions of the Franchise Agreement, on October 19, 2020, Dunkin' sent Defendants a Notice of Default and Termination (the "Notice of Termination"). The Notice of Termination terminated the Franchise Agreement, stated the grounds for termination, and requested that Defendants comply with their post-termination obligations within sixty (60) days of receipt of the Notice of Termination, as set forth in the Franchise Agreement.

### COUNT I
### (Breach of Contract - Breach of Franchise Agreement)

31. The allegations of paragraphs 1 through 30 are hereby incorporated by reference.

32. Dunkin' has performed all of its obligations under the Franchise Agreement.

33. Defendants' conduct described herein constitutes breaches of the above-described contractual obligations contained in the Franchise Agreement.

34. These breaches constitute good cause for terminating the Franchise Agreement.

35. As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

### COUNT II
### (Trademark Infringement)

36. The allegations of paragraphs 1 through 35 are hereby incorporated by reference.

37. The use in commerce of the Dunkin' Marks and trade names by Defendants outside the scope of the Franchise Agreement and without Plaintiffs' consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Plaintiffs.

Such unauthorized use of Dunkin's Marks infringes its exclusive rights in its trademarks under Section 32 of the Lanham Act, 15 U.S.C. § 1114 and applicable state law.

38. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

39. As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT III
## (Unfair Competition)

40. The allegations of paragraphs 1 through 39 are hereby incorporated by reference.

41. The use in commerce of Dunkin's Marks by Defendants outside the scope of the Franchise Agreement and without the consent of Plaintiffs is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person. Such unauthorized use of Dunkin's Marks violates Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) and applicable state law.

42. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

43. As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT IV
## (Trade Dress Infringement)

44. The allegations of paragraphs 1 through 43 are hereby incorporated by reference.

45. Defendants' shop is identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin'" and "Dunkin' Donuts" appear in the same lettering style and in the same distinctive color scheme as Dunkin' uses for the donut shops operated by their licensees.

46. The use by Defendants of trade dress that is identical to the Dunkin' trade dress outside the scope of the Franchise Agreement constitutes a false designation of the origin of Defendants' shop, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their shop with the Dunkin' shops operated by Dunkin's licensees. Such adoption of the Dunkin' trade dress violates Section 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

47. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

48. As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

a. Enter a declaratory judgment order stating that the conduct of Defendants violated the terms of the Franchise Agreement, and constitutes good cause for terminating the agreement;

b. Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreement as of the effective date of termination;

c. Enter a judgment in favor of Dunkin' for the damages it has incurred as a result of the breaches of the Franchise Agreement by Defendants;

    d.    Enjoin Defendants and all those acting in concert with them from infringing upon Dunkin's trademarks, trade dress, and trade names and from otherwise engaging in unfair competition with Dunkin';

    e.    Enter an injunctive order directing Defendants to comply with their post-termination obligations under any contract with Plaintiffs, including but not limited to the Franchise Agreement and Option to Assume Lease Agreement (or similar agreement giving Plaintiffs the option to assume the lease upon termination), and to take all steps required to transfer their leasehold interests in the shop to Dunkin' or its designee(s) in the event that Dunkin' elects to exercise any rights it or any of its affiliates or subsidiaries might have in such interests;

    f.    Award Plaintiffs prejudgment interest in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117;

    g.    Award Plaintiffs their costs and attorneys' fees incurred in connection with this action pursuant to the Franchise Agreement and Section 35 of the Lanham Act, 15 U.S.C. § 1117; and

    h.    Award Plaintiffs such other relief as this Court may deem just and proper.

Dated: October 22, 2020                  Respectfully submitted,

                                              **SAIBER LLC**

                                              Attorneys for Plaintiffs Dunkin' Donuts Franchising LLC and DD IP Holder LLC

                                              */s/ Robert B. Nussbaum*
                                              Robert B. Nussbaum, Esq.
                                              **SAIBER LLC**
                                              18 Columbia Turnpike, Suite 200
                                              Florham Park, New Jersey 07932
                                              Telephone:    (973) 622-3333

Facsimile:  (973) 622-3349
rbn@saiber.com


David E. Worthen (*pro hac vice* to be filed)
**PLAVE KOCH PLC**
12005 Sunrise Valley Drive
Suite 200
Reston, Virginia 20191
Telephone:  (703) 774-1200
Facsimile:  (703) 774-1201
dworthen@plavekoch.com